FILED

2014 Jul-28  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **M.G.B.  o/b/o A.S.B.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **6:12-cv-2913-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff M.G.B., brings this action on behalf of his son, A.S.B. ("the Claimant"), pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

M.G.B. protectively filed an application on behalf of his minor child, A.S.B., for the child's Supplemental Security Income (SSI), alleging a disability onset date of November 1, 2008, due to bipolar disorder, attention deficit disorder, and an eye disorder.  (R. 27, 123).  After the SSA denied his claim, the Claimant requested a

hearing before an ALJ.  (R. 82-83).  The ALJ subsequently denied the Claimant's claim, (R. 23-40), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-6).  M.G.B. then filed this action for judicial review pursuant to 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the

court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III. Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if the claimant has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity." 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings). The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. 20 C.F.R. § 416.924. The three-step process requires a child to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing-level severity, that is, the impairments meet, medically equal, or functionally equal the severity of an impairment in the listings. 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the ALJ must determine if the child's impairments meet or medically equal an impairment listed in the listings.  20 C.F.R. § 416.924(a)-(d).  An impairment medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment."  If the claimant's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are, instead, functionally equivalent in severity.  20 C.F.R. §§ 416.924(d), 416.926a(a).  For the child's impairments to functionally equal a listed impairment, they must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).  If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled is reached and the claim is denied.  *See* 20 C.F.R. § 416.924(d)(2).

### IV.  The ALJ's Decision

In performing the three step analysis, initially, the ALJ determined that the Claimant has not engaged in any substantial gainful activity since his alleged disability

onset date.  (R. 30).  Next, in satisfaction of Step Two, the ALJ noted that the

Claimant suffers from the severe impairments of "obesity, bipolar disorder, and

affective disorder."  *Id.*  Finally, at Step Three, the ALJ concluded that the Claimant's

impairments did not meet, medically equal, or functionally equal any of the listed

impairments and, therefore, found that the Claimant was not disabled.  (R. 31, 39).

## V.  Analysis

The court now turns to M.G.B.'s sole contention, which is that the ALJ erred in

finding the Claimant had less than a "marked" limitation in five of the six domains

when he considered whether the Claimant's impairments functionally equaled a listed

impairment.[1]  M.G.B. contends that the ALJ failed to adequately explain his finding

with respect to each of these five domains.  The court addresses each domain in turn.

A.     Acquiring and Using Information

This domain addresses how well the child acquires, learns, and uses

information.  20 C.F.R. § 416.926a(g).  Basically, a school-age child (ages 6 to 12),

like the Claimant

> should be able to learn to read, write, and do math, and discuss history
> and science.  [He] will need to use these skills in academic situations to
> demonstrate what [he has] learned; e.g., by reading about various
> subjects and producing oral and written projects, solving mathematical
> problems, taking achievement tests, doing group work, and entering into
> class discussions.  [He] will also need to use these skills in daily living
> situations at home and in the community (e.g., reading street signs,

---

[1]  M.G.B. concedes the ALJ did not err in finding the Claimant had no limitation
in the domain of interacting and relating with others.  Doc. 9 at 12.

telling time, and making change).  [He] should be able to use
increasingly complex language (vocabulary and grammar) to share
information and ideas with individuals or groups, by asking questions
and expressing [his] own ideas, and by understanding and responding to
the opinions of others.

*Id.*  The ALJ found the Claimant had less than a marked limitation in this domain,

which means he determined that the Claimant's limitations did not seriously interfere

with his ability to acquire, learn, and use information.  *See* 20 C.F.R. §

416.926a(e)(2)(i) ("A claimant has a "marked" limitation if his "impairment(s)

interferes seriously with [his] ability to independently initiate, sustain, or complete

activities.").

To support his finding, the ALJ noted that the "record indicates that [during the

second grade] prior to starting Abilify, [the Claimant] was experiencing little difficulty

in school," and "was making mostly A's and B's."  (R. 32, 133).  The ALJ also

observed that the Claimant's second grade teacher "opined the claimant easily

refocused when reminded and was very respectful during group discussions and

performed at or above average."  (R. 32, 155-56).  However, the ALJ noted that when

the Claimant subsequently started taking Abilify to treat his mental impairments,

"[a]lthough the parents reported symptom improvement . . . school records note on

multiple occasions that the teacher was suspicious that the claimant was over-sedated

with medication and appeared drugged," (R. 32), and that after school officials

expressed concerns to the Department of Human Resources (DHR), the Claimant's

family stopped all medications on April 29, 2009.  (R. 33).  Although the Claimant was again prescribed Abilify in September 2009, the ALJ observed that the 2009-2010 school records show "he is primarily making A's, B's, and C's which again contrasts sharply with the mother's allegations and is totally inconsistent with the teacher reports of claimant's inability to function at school when taking Abilify."  (R. 33). Therefore, the ALJ concluded that "[t]he only apparent difficulty has been when heavily sedated.  He is currently in the 3rd grade and has no special accommodations and is making A's, B's, and C's."  (R. 34).

The ALJ also gave significant weight to the opinions of Ms. Alicia Baughn, the Claimant's first grade and third grade teacher, who completed a teacher questionnaire on April 8, 2010, (R. 34), in which she rated the Claimant's limitation in ten activities related to the domain of acquiring and using information.  (R. 191).  Ms. Baughn indicated the Claimant (1) had no problem comprehending oral instructions, understanding vocabulary, understanding and participating in class discussions, or learning new material, (2) had only slight problems reading and comprehending written material, providing organized oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem-solving skills in class discussions, and (3) that while the Claimant had an obvious problem comprehending and doing math problems, "extra work and more support at home should help him catch up in math."  *Id.*  The only area in which Ms. Baughn indicated

the Claimant had a serious problem was in expressing ideas in written form, "because [the Claimant's] handwriting is almost unreadable." *Id.* Because Ms. Baughn's assessment supports the ALJ's finding with respect to the acquiring and using information domain, the ALJ committed no error in giving it significant weight.

In short, contrary to M.G.B.'s contention, the ALJ's narrative discussion of the evidence clearly shows the reasoning behind his decision in this domain. The evidence discussed by the ALJ and Ms. Baughn's questionnaire provide substantial evidence to support the ALJ's finding in this domain.

B.     Attending and Completing Tasks

This domain addresses how well a child is able to focus and maintain attention, and to begin, carry through, and finish activities–including the pace at which those activities are performed. *See* 20 C.F.R. § 416.926a(h). In this domain, a school-age child

> should be able to focus [his] attention in a variety of situations in order to follow directions, remember and organize [his] school materials, and complete classroom and homework assignments. [He] should be able to concentrate on details and not make careless mistakes in [his] work (beyond what would be expected in other children [his] age who do not have impairments). [He] should be able to change [his] activities or routines without distracting [himself] or others, and stay on task and in place when appropriate. [He] should be able to sustain [his] attention well enough to participate in group sports, read by [himself], and complete family chores. [He] should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).  The ALJ found the Claimant had less than a marked

limitation in this domain, but that the Claimant "has difficulty focusing and paying

attention."  (R. 36).  The ALJ further found the Claimant "has difficulty completing

classwork/homework assignments and completing work accurately, and finishes very

little of his assignments in a timely manner because of medication side effects."  *Id.*

M.G.B. again contends the ALJ did not adequately explain his reasons for this

finding.  However, the ALJ's discussion of the evidence makes clear that he found

most of the Claimant's limitations in this domain were caused by overmedication.  For

example, the ALJ noted that after restarting Abilify,

> school records show that [the Claimant] is again experiencing significant
> side effects.  He experiences constant drowsiness making it impossible
> to finish assignments in a timely manner.  Ms. Baughn, the claimant's
> 1st grade teacher and current 3rd grade teacher, . . . has expressed
> concerns to his parents numerous times about his medication being too
> strong, but nothing has been changed.

(R. 33).  The ALJ also emphasized that even though school records show the Claimant

"comes to school without his backpack or materials to work with and fails to complete

many homework assignments," this was because "[t]he claimant was apparently being

over-sedated at home, as the records suggest DHR took him to Dr. Vansickle who

immediately stopped all medication."  (R. 34).  The ALJ added that when "Abilify was

restarted a few months later," the Claimant began "experiencing constant drowsiness

making it impossible to finish assignments in a timely manner," and that "a tremor was

noted by the neurologist, which could be a side effect of overmedication."  *Id.*

The ALJ's findings are supported by Ms. Baughn, who stated in her questionnaire that the Claimant has serious problems in only three of the thirteen abilities covered by the questionnaire in this domain.  (R. 192).  Significantly, even in the three areas (focusing, completing assignments, and working at a reasonable pace), Ms. Baughn placed fault squarely with the medication for the serious problems.  According to Ms. Baughn's narrative, the Claimant "finishes very little of his assignments in a timely manner because his medication makes him sleepy," and that she had "expressed concerns to his  parents numerous times this year about his medication being too strong." *Id.*  Moreover, even with the side effects of medication, Ms. Baughn assessed less than severe limitations in ten of the thirteen areas.  Therefore, the ALJ's finding in this domain is supported by substantial evidence regardless of the overmedication issue.

C.    Moving about and Manipulating Objects

This domain addresses how well a child is able to move from one place to another, as well as to move and manipulate things. *See* 20 C.F.R. § 416.926a(j).  In this domain, school-age children should move at an efficient pace, enjoy a variety of physical activities, use household tools independently, use scissors, and write. *See* 20 C.F.R. § 416.926a(j)(2)(iv).  M.G.B. takes issue with the ALJ's finding that the Claimant has visual and motor skill deficits, including difficulty holding a pencil, but that his limitation was less than marked in this domain, (R. 38), and again takes issue

with the ALJ's alleged lack of an explanation for his finding.  The court finds no error

and notes that although the ALJ did not focus on the Claimant's physical impairments,

he referenced that the Claimant plays football.  (R. 32, 34, 37)   In fact, as M.G.B.

concedes, the Claimant testified he plays football; his mother testified that he plays in

the yard and can throw a football and a baseball; and his father testified that he plays

ball with the Claimant, and that the Claimant rides a bicycle every day.  Doc. 9 at 2-4,

(R. 56, 66-68).  These activities belie the presence of a severe limitation in the

Claimant's ability to move about and manipulate objects.  Therefore, substantial

evidence supports the ALJ's finding of a less than marked limitation in this domain.[2]

D.    Caring for Himself

This domain addresses how well a child maintains a healthy emotional and

physical state, copes with stress and changes in his environment, and takes care of his

health, possessions, and living area.  *See* 20 C.F.R. § 416.926a(k).  Basically, a school

---

[2]  Ms. Baughn's questionnaire, which only indicated serious problems in two of the seven areas addressed, supports the ALJ's findings.  These areas were "moving and manipulating things (e.g., pushing, pulling, lifting, carrying, transferring objects; coordinating eyes and hands to manipulate small objects)," and "managing pace of physical activities or tasks."  (R. 194).  She explained:  "[The claimant] has an obvious visual and motor skill deficit.  His handwriting is barely readable.  He has made very little handwriting progress since I taught him in first grade.  Holding a pencil is very difficult for [him]."  *Id.*  Other than the Claimant's difficulty with handwriting, there is little suggestion in the record of any significant limitation in this domain.  Moreover, although the Claimant has a tremor, his neurologist noted there was no need to treat it unless it was bothersome, and that the "best treatment is to forget about the tremor and not focus on it."  (R. 314).  Ultimately, to the extent that M.G.B. is claiming that the Claimant has other limitations in this domain, M.G.B. presented no evidence of such limitations.

age child should be independent in most day-to-day activities such as dressing and bathing, although he may still need to be reminded to do these routinely; begin to develop an understanding of acceptable behavior and what is right or wrong; and begin to demonstrate consistent control over his behavior. *See* 20 C.F.R. § 416.926a(k)(2)(iv).  The ALJ found the Claimant had less than a marked limitation in this domain, but noted the Claimant "does not bathe as often as he should," and that "[b]ody odor/dirty clothes are often times a problem." (R. 38).  The substantial evidence supports the ALJ's finding.

In discussing the evidence, the ALJ noted that the Claimant's teacher "did report that his clothes were much too large which caused him to walk in a clumsy way, and he sometimes had an odor and was unclean," and that "[s]he had addressed this with DHR who stated it was apparently a lifestyle choice and they are working with the family." (R. 32).  Therefore, it was reasonable for the ALJ to conclude that factors other than physical or mental impairments caused the Claimant's poor hygiene. Moreover, on her questionnaire, Ms. Baughn found the Claimant's limitations were less than severe in all ten activities relating to this domain.  (R. 195).  She found the Claimant had only one obvious problem, i.e. taking care of personal hygiene, and indicated only slight problems in handling frustration appropriately and in responding to changes in mood. *Id.*  Ms. Baughn indicated no problems in all other areas, including being patient, caring for physical needs, taking needed medications, using

good judgment regarding personal safety, identifying and asserting emotional needs,

using coping skills, and knowing when to ask for help.  *Id.*  The court finds that Ms.

Baughn's questionnaire provides substantial evidence to support the ALJ's finding in

this domain.

      E.      <u>Health and Physical Well-being</u>

This domain addresses the cumulative physical effects of physical or mental

impairments (and their associated treatments or therapies) on a child's functioning that

are not considered under the domain of moving about and manipulating objects.  *See*

20 C.F.R. § 416.926a(l).  Examples of limitations in this category include: (1)

generalized symptoms such as weakness, dizziness, agitation, lethargy, or

psychomotor retardation; (2) somatic complaints such as seizure, headaches,

incontinence, recurrent infections, allergies, changes in weight, stomach discomfort,

nausea, or insomnia; and (3) limitations arising from treatments such as chemotherapy,

multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments.  *See* 20

C.F.R. § 416.926a(l)(4).  Social Security Ruling (SSR) 09-8p explains that this

domain "addresses how such things as recurrent illness and side effects of medication,

and the need for ongoing treatment affect a child's body; that is, the child's health and

sense of physical well-being," and that these physical effects can be the consequence

of treatment.  2009 WL 396030 at *2 (S.S.A.).  Relevant to this case, the ruling

recognizes that medications "can cause generalized symptoms, such as fatigue, dizziness, or drowsiness." *Id.*

Consistent with SSR 08-9p, the ALJ found the Claimant had reduced stamina, difficulty staying awake, and constant drowsiness due to medication side effects, but that the Claimant had less than a marked limitation in this domain.  (R. 39).  M.G.B. again contends the ALJ did not adequately explain his reasons for finding less than a marked impairment in this domain.  However, it is clear from the decision that the ALJ found the Claimant was being over medicated.  For example, he noted that school records reflect "on multiple occasions that the teacher was suspicious that the Claimant was over-sedated with medication and appeared drugged." (R. 32).  The ALJ found that the failure of the Claimant's mother to report to Doctor Lorn Miller that she was giving the Claimant Benadryl at night to help him sleep "lend[s] credibility to the teacher and principal opining possible over-sedation." (R. 33).  The ALJ also observed that "the claimant was apparently being over-sedated at home, as the records suggest DHR took him to Dr. Vansickle who immediately stopped all medications." (R. 34).  Nonetheless, in spite of being over-sedated, the ALJ observed that the Claimant was "making A's, B's, and C's [and] has friends and plays football." *Id.*  That the Claimant was able to achieve good grades and play football while overusing medications provides substantial evidence to support the ALJ's finding that

14

the Claimant's drowsiness and reduced stamina did not result in a marked limitation in the domain of health and well-being.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that the Claimant is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

DONE this 28th day of July, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE